**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| JON M. FLETCHER, DVM | § | Civil Action No. _____ |
| *Plaintiff,* | § | |
| | § | |
| versus | § | |
| | § | |
| MEDVET ASSOCIATES, LLC, | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT FOR**
**DECLARATORY RELIEF, TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY AND PERMANENT INJUNCTIONS, AND OTHER RELIEF**

Plaintiff, Jon M. Fletcher, DVM ("Plaintiff"), an individual of the full age of majority domiciled in East Baton Rouge Parish, Louisiana, through undersigned counsel, files his Original Verified Complaint for Declaratory Relief, Temporary Restraining Order, Preliminary and Permanent Injunctions, and Other Relief, against Defendant, MedVet Associates, LLC ("Defendant" or "MedVet"), and respectfully shows:

## I.

## INTRODUCTION

1.     Plaintiff was employed by Defendant since in or about October 2019 as its Director of Post-Graduate Education. Defendant required Plaintiff to sign an employment agreement that, contrary to La. R.S. 23:921(A)(1), contained *Ohio* choice of law and choice of forum provisions, as well as non-compete and non-solicitation covenants that are null and void under *Louisiana* law. After giving advance notice of his resignation effective January 30, 2026, Defendant asked Plaintiff to sign a new agreement containing revised non-compete and non-solicitation covenants, which revised agreement Plaintiff refused to sign. Then, on January 26, 2026, Defendant, through its outside lawyers located in Columbus, Ohio, sent Plaintiff a letter "***RE: Veterinary Employment***

1

*Agreement and Violations of Non-Compete*," by which Defendant threatened legal action under the existing employment agreement if Plaintiff would not sign the revised agreement.

2.      Plaintiff now, therefore, seeks to have this Court declare unenforceable the Ohio choice of law and choice of forum provisions in the employment agreement, as well as the non-compete and non-solicitation covenants contained therein, and, in addition to seeking such declaratory judgment, also asks the Court to enjoin Defendant from trying to circumvent the Court's jurisdiction by attempting to bring competing litigation in Ohio or elsewhere on the basis of the illegal choice of forum/law provisions that violate La. R.S. 23:921.

## II.

## THE PARTIES

3.      Plaintiff, a Louisiana citizen, obtained his Doctor of Veterinary Medicine (DVM) degree from Louisiana State University in 2005, and is a board-certified veterinary internal medicine specialist.

4.      Plaintiff joined Defendant in or about October 2019 in a non-clinical position – *i.e.*, not treating patients or interacting with clients or referring veterinarians in any capacity – as its Director of Post-Graduate Education. In that capacity, Plaintiff worked with hospital leaders, doctors, and other trainees in training programs across the group of veterinary ER and specialty hospitals run by Defendant. The entire time that Plaintiff worked for Defendant he worked from his home located in East Baton Rouge Parish, Louisiana.

5.      Defendant is a non-Louisiana limited liability company, with its principal place of business located at 350 East Wilson Bridge Road, Columbus, Ohio 43085. Defendant may be served with process by serving its registered agent, CT Corporation System at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816.

2

6.      According to Louisiana Secretary of State records, Defendant's members are Linda Lehmkuhl and Eric Schertel, who are both (on information and belief) domiciled in Columbus, Ohio.

## III.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship between the parties, with Plaintiff a citizen of Louisiana and Defendant a citizen of Ohio,[1] and because the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000. More particularly, Plaintiff earned a salary of $200,000/year under his employment agreement with Defendant (in addition to bonuses, raises, and other employee benefits), and will earn a commensurate amount in new employment after leaving Plaintiff. Thus, the value of the right to pursuit of his livelihood/employment that is sought to be protected by the equitable relief and declaratory judgment requested in this action exceeds $75,000.[2]

8.      Venue is appropriate in this Court because Defendant is subject to the court's personal jurisdiction with respect to this action given its contacts with this District through its employment of Plaintiff within this District; and a substantial part of the events occurred in this District (again, given Defendant's employment of Plaintiff within this District). 28 U.S.C. § 1391(b)(1), (2).

---

[1] The citizenship of a limited liability company is determined by the citizenship of each member of the entity, not by the state where the entity was organized. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

[2] In a suit seeking injunctive relief, the amount in controversy is measured by the value of the right sought to be protected by the equitable relief. *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013). In a suit seeking declaratory relief, the amount in controversy is measured by the value of the object of the litigation, the extent of the injury to be prevented, or the value of the right to be protected. *Id.*; *Energy Catering Servs. v. Burrow*, 911 F.Supp. 221, 223 (E.D. La. 1995).

**IV.**

**FACTS**

9.      In connection with his hiring by Defendant, Plaintiff entered into a Confidentiality, Non-Competition, Non-Disclosure and Non-Solicitation Agreement (the "Employment Agreement"). A true and correct copy of the Employment Agreement is attached as **Exhibit A** and incorporated herein by this reference.

10.      At the time he executed the Employment Agreement, Plaintiff resided and was domiciled in the State of Louisiana. Nevertheless, Defendant included choice of law and choice of venue clauses in his Employment Agreement purporting to apply the laws of the State of Ohio to the agreement and to require that suits be pursued in the federal or state courts in Ohio or any other state wherein Defendant operates any facility. Exhibit A, Sec. 11 (providing: "**Governing Law; Venue.** This Agreement shall be governed by the laws of the State of Ohio without regard to conflicts of law principles. Any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement may be brought or otherwise commenced in any state or federal court located in the State of Ohio. You expressly and irrevocably consent and submit to the non-exclusive jurisdiction of each state and federal court located in the county where any MedVet facility is located (and each appellate court located in the state where any such county is located) in connection with any such legal proceeding, and agree that each state and federal court located in any such county (and each appellate court located in any such state) shall be deemed to be a convenient forum.") (bolded emphasis in original).

11.      Such choice of law and choice of venue provisions are invalid under La. R.S. 23:921(A)(2). Under La. R.S. 23:921(A)(2): "The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person

or entity includes a **choice of forum clause or choice of law clause** in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be **null and void** except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action." La. R.S. 23:921(A)(2) (emphasis added).

12.     Plaintiff has not, and will not, ratify (indeed, expressly rejects) the choice of law or choice of venue clauses in the Employment Agreement. Accordingly, Louisiana law applies to the Employment Agreement.

13.     While the Employment Agreement purported to include a non-compete (Exhibit A, Sec. 4), such provision is invalid and unenforceable under Louisiana law due to its lack of a geographic restriction that *specifically lists* the parish or parishes, municipality or municipalities, or parts thereof, that are included within any restricted geographical territory. La. R.S. 23:921(C) requires that the restricted parish or parishes, municipality or municipalities, or parts thereof be "specified," *i.e.*, specifically named, and be territories in which the employer is "carrying on a like business" *at the time of execution of the agreement*. *See, e.g., Hoist & Crane Serv. Grp., Inc. v. Standard Crane & Hoist, LLC*, 360 So.3d 918, 923 (La. Ct. App. 2023) (holding noncompete was unenforceable as overbroad because it did not specify the parishes or municipalities in which the employee was prohibited from competing); *Env't Safety & Health Consulting Servs., Inc. v. Fowler*, 2020 WL 1173587, at *11-12 (La. Ct. App. Mar. 11, 2020); *Deep S. Commc'ns, LLC v. Fellegy*, 652 F. Supp. 3d 636, 669 (M.D. La. 2023) (analyzing Louisiana law).

14.     The Employment Agreement does not include this essential language. Instead, the Employment Agreement defines the restricted territory as merely "North America." Exhibit A, Sec. 4(a)(5)(c) ("…you agree that during the Restricted Period, you will not engage in any capacity, directly or indirectly, in a Competing Business in North America."). The lack of an appropriate definition of the restricted territory is fatal to the noncompete within the Employment Agreement.

15.     While the Employment Agreement purports to also include a provision against solicitation of its program participants/clients, referral partners, and suppliers/vendors, such provision is also invalid and unenforceable under Louisiana law due to its lack of *any* geographic restriction. Under (applicable) Louisiana law, a non-solicitation of customers agreement may be enforceable if it strictly complies with the Louisiana noncompete statute. *See* La. R.S. 23:921(A)(1) ("Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, **except as provided in this Section**, shall be **null and void**…") (emphasis added); *Wechem, Inc. v. Evans*, 274 So.3d 877, 885 (La. App. 5th Cir. 2019), *writ denied*, 280 30.3d 600 (La. 2019) ("To be valid, non-competition and non-solicitation agreements must comply with La. R.S. 23:921. Although non-competition agreements are separate and distinct from non-solicitation agreements, the requirements of La. R.S. 23:921 apply to both."); *Vartech Sys., Inc. v. Hayden*, 951 So.2d 247, 260 (La. App. 1st Cir. 2006) ("A non-solicitation agreement is separate and apart from a non-compete agreement. The requirements of LSA-R.S. 23:921 apply to non-solicitation agreements, as well as non-compete agreements. [Case citation omitted.] Thus, to be valid, a non-solicitation agreement must also meet the requirements of La. R.S. 23:921(C).

16.     The non-solicitation provision within the Employment Agreement is unenforceable in Louisiana because it fails to include *any* geographic limitation.[3] Again, La. R.S. 23:921(C) requires that the restricted parish or parishes, municipality or municipalities, or parts thereof be "specified." Louisiana courts have routinely declined to reform a non-solicitation clause that fails to abide by this requirement. *See, e.g., Vartech*, 951 So.2d at 260-61 ("Because requires specificity regarding geographical limitations, the non-solicitation clauses must be able to stand on their own."). The lack of any specified geographic territory is fatal to the non-solicitation clause within the Employment Agreement.

17.     As previously noted, after Plaintiff gave advance notice (on January 6, 2026) of his resignation of employment with Defendant, with his final day scheduled for January 30, 2026, Defendant presented Plaintiff with a new "Addendum to Offer Letter and Confidentiality, Non-Competition, Non-Disclosure and Non-Solicitation Agreement" to try to get Plaintiff to agree to modifications to his August 2019 Employment Agreement (the "Proposed Addendum"). A true and

---

[3] Rather, the non-solicitation of customers provisions reads only: "**Non-Solicitation of Training Program Participants, Clients and Referral Partners Covenant.** You agree that during the Employment Relationship and during the Restricted Period, you will not, directly or indirectly: (a) dissuade Training Program Participants, Clients or Referral Partners from utilizing the services of MedVet; or, (b) solicit or otherwise divert or interfere with business relationships between MedVet and any Training Program Participant, Client, Referral Partner, supplier, vendor or independent contractor or attempt to assist any third party in doing so." Exhibit A, Sec. 5 (bolded emphasis in original). The Employment Agreement specially defines the terms "Clients," "Training Program Participant," and "Referral Partner" to mean:

    **(a)**    **"Clients"** means any person or entity that, directly or indirectly, through one or more intermediaries, owns or controls the medical decision-making for an animal that received veterinary care from MedVet during the Employment Relationship.

    …

    **(g)**    **"Referral Partner"** means any person or entity who owns or manages a veterinary practice or possesses a veterinary degree and/or veterinary license and who, directly or indirectly, referred a Client to MedVet during the Employment Relationship, or any person or entity who directly or indirectly referred a Training Program Participant to MedVet during the Employment Relationship.

    **…**

    **(i)**    **"Training Program Participant"** means any person or entity who directly or indirectly participates in a training program, regardless of role in the training program or extent of participation.

Exhibit A, Section 2(a), (g), (i) (bolded emphasis in original).

correct copy of the Proposed Addendum is attached as **Exhibit B** and incorporated herein by this reference.

18.    Notably, while the Proposed Addendum sought to redefine the geographic scope of the non-compete covenant – to change it from the general "in North America" language of the signed Employment Agreement – the Proposed Addendum's proposed amendments to the geographic scope would still be unlawful under La. R.S. 23:921(C)'s requirement that the restricted parish or parishes, municipality or municipalities, or parts thereof be "specified," *i.e.*, specifically listed. *See* Exhibit B, Sec. 1 (failing to specifically list any parishes/municipalities and instead proposing, for example, "a 25 air-mile radius of any current MedVet hospital's premises outside of Louisiana," etc.).

19.    The Proposed Addendum also sought to double the length of the restrictive covenants from one year to two years after termination of the employment relationship. *Cf.* Exhibit A, Sec. 2(h) (defining the "Restricted Period" to mean "a period of one year after the termination of the Employment Relationship") to Exhibit B, Sec. 2(h) (re-defining the "Restricted Period" to mean "a period of two years after the termination of the Employment Relationship").

20.    Plaintiff refused to sign the Proposed Addendum.

21.    Then, on Monday, January 26, 2026, at 8:59AM, an attorney with Defendant's outside law firm, Ice Miller LLP, in Columbus, Ohio, Catherine Strauss, emailed Plaintiff a letter threatening suit under the Employment Agreement if he would not execute the Proposed Addendum. A true and correct copy of the demand letter is attached as **Exhibit C** and incorporated herein by this reference (the "Demand Letter").

22.    In an attempt to interfere with his new employment, Defendant copied its January 26, 2026 letter to Plaintiff to Mission Pet Health.

23.     In the Demand Letter, Defendant claimed his new employment planned for after he left Defendant on January 30, 2026 will violate the (unenforceable under Louisiana law, as further discussed above) non-compete provision of his Employment Agreement. The Demand Letter then quoted the non-compete provision of his Employment Agreement, and counsel specifically emphasized that "the applicable geographic area is North America. Your New Employment is well within North America." Exhibit C, p. 2. The Demand Letter also quoted the (unenforceable under Louisiana law, as further discussed above) non-solicitation provision of his Employment Agreement. Defendant then argued that Plaintiff's new employment with a competitor will constitute violations of both the (unenforceable) non-compete and non-solicitation provisions and concluded with another demand that he execute the Proposed Addendum redefining those provisions and extending their temporal length by double their original length, threatening litigation if he did not accept the Proposal Addendum or forego the new employment he had already accepted, writing:

"Absent the signed Addendum, the Agreement remains in full force and effect. MedVet therefore requests that you either confirm you will not proceed with the New Employment or advise that you are willing to execute the Addendum as offered. Please provide your written response no later than close of business on Wednesday, January 28, 2026. If MedVet does not receive a confirmation by that date, and you begin employment with New Employment, it will proceed on the understanding you re in violation of the Agreement, In that event, MedVet will take appropriate steps to protect and enforce its contractual rights."

Exhibit C, p. 3.

9

24.    Plaintiff has no intention to ever execute the Proposed Addendum and intends to proceed with new employment with Mission Pet Health after January 30, 2026.

25.    Though not addressed in Defendant's recent Demand Letter, when Plaintiff purchased stock/units in Defendant, which units were made available for his purchase *only* in connection with his status as an *employee* of the Company, the Company's Sixth Amended and Restated Operating Agreement provided certain restrictive covenants applicable to "Management Members." A true and correct copy of the relevant excerpts of the Operating Agreement are attached as **Exhibit D** and incorporated by this reference (the "Operating Agreement").

26.    The Operating Agreement defined "Management Members" to mean "***each Common Member that is or was employed by the Company***, Vetcorp or any of their respective Affiliates, (ii) each Person to whom Profit Units are granted by the Board, unless any such Person is otherwise determined by the Board to not be so classified and (iii) any other Common Member as determined by the Board to be so classified; provided that, for purposes hereunder, in no event will any Person who is a Preferred Member, a holder of Investor Warrants or who holds Common Units issued as a result of any Investor Warrants (including the Broad Street Investor) be a Management Member." Quoting Exhibit D, Art. I, Definitions, Section 1.1 Definitions, p. 14 (emphasis added).

27.    Given the connection with his employment status, the provisions of this Operating Agreement, therefore, constitute an employment agreement within the meaning of La. R.S. 23:921(A)(2).

28.    The non-compete within the Operating Agreement applicable to "Management [i.e., employee] Members," provides in relevant part with respect to its geographical scope as follows:

10

"For a period of two (2) years from and after such Management Member's Termination (the 'Restricted Period'), **within a 25 air-mile radius of any hospital or other veterinary facility owned or operated by the Company or any of its Affiliates during such Management Member's Employment Relationship** at which such Management Member worked more than 26 days in any 12-month period, or at least six days in any three-month period (collectively, the 'Geographic Area'), not to engage in any capacity, directly or indirectly, in a Competing Business…"

Exhibit D, Art. X, Confidentiality; Restrictive Covenants, Section 10(b)(ii) (underlined emphasis in original; bolded emphasis added).

29.     The Operating Agreement also specially defined the term "Employment Relationship" – *i.e.*, a term used within the non-compete – to mean a "Management Member's employment with, or provision of services to, the Company or any of its Affiliates." Exhibit D, Art. I, Definitions, Section 1.1 Definitions, p. 10. While there is a split of authorities on the issue, several courts have held the restrictions of La. R.S. 23:921 can apply to even non-employee agreements, such as agreements with independent contractors due to a similar disparity in bargaining power found in employer-employee relations that is found with independent contractors, and here, the restrictive covenants within the Operating Agreement applicable to employee-Management Members are clearly linked to the ***employee/employment status*** of the member. *See, e.g.*, *Jackson v. Emergency Staffing Sols., Inc.*, 2024 WL 2295786, at *5-7 (E.D. La. May 21, 2024) (holding La. R.S. 23:921 applicable to independent contractor agreement between physician and staffing agency, writing: "Louisiana intermediate appellate courts and federal district courts have found that Section 921(A)(2) applies to independent contractors, in part because of the

disparity in bargaining power between the worker and the business entity. Plaintiff is an individual worker who had unequal bargaining power when negotiating the Physician's Agreement, presumably a form contract, with Defendant, a Texas corporation. Therefore, Section 921(A)(2) voids the Texas choice of law provision in the Physician's Agreement and Louisiana substantive law applies to interpret the meaning and scope of the Physician's Agreement and forum selection clause in this case."); *O'Hara v. Globus Med., Inc.*, 181 So.3d 69 (La. App. 1st Cir.), *writ denied*, 182 So.3d 939 (La. 2015) ("Since employees could not agree to choice of forum or choice of law clauses in their employment agreements or contracts, neither could independent contractors. Thus, La. R.S. 23:921(A)(1) and (A)(2) apply to independent contractors to the same extent as if they were employees."); *Bowman v. R.L. Young, Inc.*, 2022 WL 2967427, at 3 (E.D. La. July 27, 2022) (following *O'Hara* writing: "Bowman, though an independent contractor and not an employee, experienced the same disparity of bargaining power as the employee in *O'Hara*. In contrast, the parties in *Reynolds* [*v. Paulson*, 871 So.2d 1215 (La. App. 4th Cir. 2004)] were sophisticated entities with a history of doing business together when they entered into agreements. Further, the court in *O'Hara* – which, notably, released its opinion some 11 years after the opinion in *Reynolds* – conducted a detailed statutory analysis of La. R.S. 23:921(C), which authorizes independent contractors to enter into non-solicitation agreements in the same manner as employees of a company. [Footnote omitted] Accordingly, the court determined that the provisions of La. R.S. 23:921 that apply to employees, including the general policy against non-solicitation clauses and strict geographic and time limits necessary to qualify as an acceptable non-solicitation clause, apply to independent contractors as if they were employees.").

4916-1733-8507 v1

30.    Given the failure to specify any particular parishes or municipalities that are within the geographic scope, the purported non-compete within the Operating Agreement is also unenforceable under Louisiana law as applied to Plaintiff.

31.    Besides the non-compete, the Operating Agreement contains a non-solicitation of client's provision applicable to employee-Management Members which, like his Employment Agreement, has no geographic scope whatsoever, reading: "During such Management Member's Employment Relationship and the Restricted Period, [he agrees] not to directly or indirectly: (A) dissuade Clients or Referral Partners from utilizing the services of the Company or any of its Affiliates; or, (B) Solicit or otherwise divert or interfere with business relationships between the Company or any of its Affiliates and any Client, Referral Partner, supplier, vendor or independent contractor, or attempt to assist any third party in doing so, provided, that none of the restrictions in this Section 10.2(b)(iii) shall restricted [sic] such Management Member using his or her best professional judgment in a given situation." Exhibit D, Article X, Confidentiality; Restrictive Covenants, Section 10(b)(iii) (underlined emphasis in original).

32.    Given the failure to specify *any* geographic scope at all – much less one with the requisite listing of parishes and municipalities – the purported non-solicitation provision within the Operating Agreement is also unenforceable under Louisiana law as applied to Plaintiff.

33.    The Operating Agreement further provides with respect to its non-compete and non-solicitation provisions, that any conflicting terms in a separate Employment Agreement control and supersede those within the Operating Agreement. More specifically, the Operating Agreement provides:

"Notwithstanding the provisions of this Article X, if any Management Member is a party to any agreement with the Company or any Subsidiary the terms of which

13

govern issues and obligations which are identical or substantially similar to those addressed in these foregoing sections [including the above-quoted non-compete and non-solicitation provisions] (any such terms, 'Conflicting Terms'), the Conflicting Terms will supersede the provisions in these foregoing sections for all purposes and Section 10.2 will not apply with respect to such Member for so long as such Conflicting Terms are in effect with respect to such Management Member, but Section 10.2 shall apply to such Member from and after the time any such Conflicting Terms are no longer in effect with respect to such Management Member."

Exhibit D, Art. X, Confidentiality; Restrictive Covenants, Section 10(c) (underlined emphasis in original).

34.     To the extent Defendant were to argue, if at all, that any terms of the non-compete and non-solicitation provisions of the Operating Agreement survive/apply – notwithstanding the contrary terms of Plaintiff's controlling Employment Agreement – as discussed above, those provisions are unenforceable under Louisiana law due to their lack of appropriate geographical scopes.

35.     The "Governing Law" section of the Operating Agreement (Exhibit D, Article 14, Miscellaneous, Sec. 14.3) also improperly purports to apply Ohio law to non-compete and non-solicitation agreements of a Louisiana-based employee shareholder, despite La. R.S. 23:921(A)(1)'s prohibition against such a provision in "every employment contract or agreement, or provisions thereof" and against attempted enforcement of such provisions in "any civil or administrative action involving an employee."  La. R.S. 23:921(A)(2).

14

36.    And the "Jurisdiction" provision of the Operating Agreement likewise improperly purports to require any "suit, action or proceeding under or with respect to this Agreement… shall be brought in any court of competent jurisdiction in the State of Ohio and each of the Company and the Members hereby submits to the exclusive jurisdiction of the courts in Franklin County Ohio, for the purpose of any such suit, action, proceeding or judgment." Exhibit D, Art. 14, Miscellaneous, Sec. 14.10.

37.    Plaintiff has not, and will not, ratify (indeed, expressly rejects) the choice of law or jurisdiction clauses in the Operating Agreement. Accordingly, Louisiana law applies to any dispute related to any (arguable) non-compete or non-solicitation provisions that apply to him by virtue of his status as an employee- Management Member under the Operating Agreement.

**V.**

**CAUSES OF ACTION**

**COUNT 1: DECLARATORY JUDGMENT**

38.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

39.    Plaintiff executed the Employment Agreement while he resided in the State of Louisiana, he resided in Louisiana throughout his entire tenure with Defendant, and he remains domiciled in Louisiana.

40.    Louisiana has a strong public policy prohibiting employment agreements that select another state's law and/or venue to cover/handle disputes with Louisiana residents and prohibiting agreements in restraint of trade unless they meet specific legal requirements. Louisiana law, in La. R.S. 23:921, expressly prohibits choice of law and choice of venue clauses in any employment contract and prohibits any attempt "to enforce either a choice of forum or choice of law clause in

15

any civil or administrative action involving an employee." La. R.S. 23:921, therefore, renders the choice of Ohio law/forum provisions in Plaintiff's Employment Agreement with Defendant null and void and prohibits any attempt by Defendant to enforce a foreign choice of law/choice of forum clause in any civil or administrative action involving his ability to compete with Defendant in Louisiana. A declaratory judgment should be rendered in favor of Plaintiff declaring the choice of law/venue provisions within Exhibit A invalid and unenforceable.

41.    Louisiana law requires that agreements regarding non-competition and/or the non-solicitation of customers specify the parishes, municipalities, and/or parts thereof to which they apply. Plaintiff's Employment Agreement with Defendant, Exhibit A, fails to specify the parishes or municipalities or parts thereof to which its restrictive covenants apply. The non-competition and non-solicitation of customers provisions are not limited geographically in any way that meets the requirements of La. R.S. 23:921. They, thus, violate Louisiana law and are null and void and a declaratory judgment should be rendered in favor of Plaintiff declaring the non-compete and non-solicitation of customers provisions within Exhibit A invalid and unenforceable.

42.    Plaintiff similarly executed the subscription agreement by which he purchased membership units in Defendant as an employee-"Management Member," and thereby became subject to Defendant's Operating Agreement, while he resided in the State of Louisiana, and he remains domiciled in Louisiana.

43.    The choice of law and jurisdiction clauses of the Operating Agreement are unenforceable as applied to Plaintiff because of La. R.S. 23:921, and a declaratory judgment should be rendered in favor Plaintiff that the choice of law/jurisdiction provisions within Exhibit D are invalid and unenforceable as applied to him with respect to any attempted enforcement of the restrictive covenants contained within that Agreement.

16

44.    The non-compete and non-solicitation provisions of the Operating Agreement applicable to employee-"Management Members" do not include geographical limitations that comply with La. R.S. 23:921.

45.    They, thus, violate Louisiana law and are null and void and a declaratory judgment should be rendered in favor of Plaintiff declaring the non-compete and non-solicitation of customers provisions within Exhibit D invalid and unenforceable.

## COUNT II:  ANTISUIT INJUNCTIONS

46.    Plaintiff repeats and incorporates by reference the allegations in the preceding paragraphs as though set forth fully herein.

47.    Courts have jurisdiction to enter preliminary injunctive relief against a former employer filing suit against a Louisiana resident in another state outside of Louisiana. *See Waguespack v. Medtronic, Inc.*, 185 F.Supp.3d 916, 930 (M.D. La. 2016) (Hon., James J. Brady, Judge Presiding) (holding former employees were entitled to preliminary injunction against former employer filing suit in another state and specifically finding that "Plaintiffs will suffer irreparable harm if Defendants are allowed to prosecute a suit in any forum that seeks to enforce the non-competition agreement contained in the Employment Agreements"); *Giglio v. Shipyard Supply Acquisition Corp.*, 2022 WL 4106454, at *3[4] (E.D. La. Sept. 8, 2022) (opining that plaintiff need

---

[4] The *Giglio* court wrote, in this regard: "Given that the noncompete clause which [defendant] seeks to enforce against [plaintiff] is facially in violation of Louisiana law, and thus, unlawful, the assertion that he need not show irreparable harm appears to be correct. Nevertheless, Plaintiff does allege that he faces irreparable harm from being forced to litigate in Texas and being unable to continue earning a living in his industry. [Record citation.] He argues that should [defendant] seek to enforce the Agreement against him in Texas court, '[t]hroughout the process, uncertainty would remain surrounding the Texas court's potential rulings on these matters and whether [plaintiff] would be able to return to work during these proceedings. Eventually, should a Texas state court rule that…Texas law applies, [plaintiff] will be unable to earn a livelihood in Louisiana, the state in which he has always lived and worked in his industry." [Record citation; case citation.] Accordingly, the Court holds that [plaintiff] had adequately alleged that in the absence of a preliminary injunction he would experience irreparable injury." *Giglio*, 2022 WL 4106454, at *3.

4916-1733-8507 v1

not show irreparable harm if the subject noncompete is facially in violation of Louisiana law and that plaintiff nevertheless demonstrated irreparable harm absent a preliminary injunction).

48.    Injunctive relief is authorized by the well-established general principles of equity. *See eBay Inc. v. Merc-Exchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Business Records Corp. v. Lueth*, 981 F.2d 957, 959 (7th Cir. 1992) (under diversity jurisdiction, federal court granted injunction based on state law). The issuance of a temporary restraining order and preliminary injunction is governed by Federal Rule of Civil Procedure 65(a).

49.    As set forth herein, Plaintiff is entitled to the relief sought and this Court has jurisdiction over this controversy. Defendant should not be allowed to avoid that jurisdiction by filing duplicative litigation elsewhere, and Plaintiff should not be forced to litigate the same issues in multiple forums. The Fifth Circuit, and authorities from around the country agree, and "it is universally accepted that a court of equity has the power to restrain persons within its jurisdiction from bringing suit in another territorial jurisdiction, which power the court may be willing to exercise in special circumstances."[5]

50.    Here, Plaintiff is entitled to the relief sought as Louisiana law and controlling jurisprudence require the Court enjoin Defendant from filing suit to enforce the Employment Agreement, or the restrictive covenants within the Operating Agreement as applied to Plaintiff due to his employee-Management Member status, in Ohio or any other state or under the auspices of the unenforceable choice of law clauses selecting Ohio law to govern.

---

[5] *When Courts of Equity Will Enjoin Foreign Suits*, 27 Iowa L. Rev. 76, 85 (1942); *see also* **In re Unterweser Reederel Gmbh, 428 F.2d 888, 890 (5th Cir. 1970) ("A court of equity has the traditional power to enjoin parties, properly before it, from litigating in another court.")**; *Injunction by State Court Against Action in Court of Another State*, 6 A.L.R. 2d 896 (1948) § 2 ("The power of a court of equity, where it has jurisdiction of the cause and of the parties, to enjoin a person from beginning or prosecuting an action in another state, has never been doubted.").

4916-1733-8507 v1

51.     The following equitable factors are considered in granting a temporary restraining order/preliminary injunction: (1) irreparable injury if the injunction is not granted; (2) no adequate remedy at law; (3) a substantial likelihood of success on the merits; (4) the balance of hardships; and (5) the effect on the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (preliminary injunction); *eBay*, 547 U.S. at 391 (permanent injunction); *Brock Servs., LLC v. Rogillio*, 936 F.3d 290, 296 (5th Cir. 2019); *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). A motion for a temporary restraining order/preliminary injunction must be accompanied by a verified complaint or affidavits. *See Federal S&L Ins. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987). At the hearing on a motion for a temporary restraining order/preliminary injunction, the plaintiff bears the burden of persuasion on each of the equitable factors but is not required to prove his case in full. *University of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A temporary retraining order/preliminary injunction may be issued on a *prima facie* showing that the party is entitled to relief. *Brock Servs.*, 936 F.3d at 296.

52.     In connection with his hire by Defendant, Plaintiff, a Louisiana resident, was required to execute the Employment Agreement, containing provisions that are both illegal and unenforceable under Louisiana law. Defendant included Ohio choice of law and venue provisions; claiming Ohio law governs the employment of Plaintiff, a Louisiana citizen, and designating that any action arising from the Agreement could be brought in an Ohio court or any "other state and federal court located in the county where any MedVet facility is located." Exhibit A, Sec. 11.

53.     Defendant now seeks to enforce the illegal choice of law and venue provisions against Plaintiff (as Defendant's threat to bring legal action implicitly included a threat to seek enforcement of the Ohio choice of law clause and venue elsewhere, since the restrictive covenants, choice of law clause, and choice of venue clauses are null and void under Louisiana law) and this

19

Court's immediate intervention is required. By including the illegal Ohio choice of venue/law clauses, Defendant clearly indicated its intent to enforce the Agreement in an Ohio court under Ohio law. However, as a Louisiana citizen, Plaintiff is entitled to have this matter resolved here, in this Court. Therefore, as there is an imminent threat of irreparable harm to Plaintiff should he be forced to litigate the illegal Employment Agreement in another state's court pursuant to an unlawful venue provision, Plaintiff must now seek a temporary restraining order, preliminary injunction and permanent injunction preventing Defendant from evading this Court's jurisdiction and from violating a general prohibitory law of this state by filing suit to enforce the Employment Agreement's restrictive covenants in Ohio or another state's courts.

54.    This Honorable Court should issue a temporary restraining order, preliminary injunction and permanent injunction against Defendant, and set a *de minimus* bond[6] as security for the temporary restraining order and preliminary injunction, because:

> a.    La. R.S. 23:921 forbids the enforcement of the Ohio choice of law clause in the Employment Agreement and the Operating Agreement made applicable to Plaintiff due to his employee status;
>
> b.    Louisiana law applies to the Employment Agreement and the restrictive covenants within the Operating Agreement made applicable to Plaintiff due to his employee status;
>
> c.    La. R.S. 23:921 forbids the enforcement of the choice of venue clause in the Employment Agreement, and the Operating Agreement made applicable to Plaintiff due to his employee status, vis-à-vis any court outside of Louisiana;

---

[6] *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999) (while setting a bond amount is mandatory, this does not prevent the court from setting a nominal bond amount) (citing *Internat'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) (approving district court's fixing bond amount at zero in the absence of evidence regarding likelihood of harm).

d.  The non-compete restriction in the Employment Agreement is invalid as it fails to provide proper geographic limitations and otherwise fails to strictly comply with La. R.S. 23:921;

e.  The non-solicitation of "Clients," "Referral Partners," and "Training Program Participants" restriction in the Employment Agreement is invalid as it fails to provide proper geographic limitations and otherwise fails to strictly comply with La. R.S. 23:921;

f.  The non-compete restriction applicable to employee-Management Members in the Operating Agreement is invalid as applied to Plaintiff as it fails to provide proper geographic limitations and otherwise fails to strictly comply with La. R.S. 23:921; and

g.  The non-solicitation of "any Client, Referral Partner, supplier, vendor or independent contractor" clause applicable to employee-Management Members in the Operating Agreement is invalid applied to Plaintiff as it fails to provide proper geographic limitations and otherwise fails to strictly comply with La. R.S. 23:921.

55.  This Court has the right, and the obligation, to issue all orders necessary for the exercise of its jurisdiction. As part of that power, this Court has the authority and the duty to enjoin Defendant from evading its jurisdiction by filing suit under the Employment Agreement in Ohio or elsewhere outside the State of Louisiana.

56.  The Fifth Circuit in particular and courts around the country have recognized it is universally accepted that a court of equity has the power to restrain persons within its jurisdiction

from bringing suit in another territorial jurisdiction, which power the court may be willing to exercise in special circumstances.

57.  An anti-suit injunction is particularly appropriate here, because:

    a.  Plaintiff is a Louisiana citizen.

    b.  The Employment Agreement at issue was executed by Plaintiff while he was a Louisiana resident.

    c.  The Employment Agreement violates La. R.S. 23:921 and, therefore, violates a strong public policy of this State.

58.  Based on the language of the Employment Agreement (and the Operating Agreement) and the express provisions of La. R.S. 23:921, Plaintiff is entitled to injunctive relief and is likely to succeed on the merits.

59.  Plaintiff is entitled to an injunction without the necessity of showing irreparable harm because the Employment Agreement and Operating Agreement violate La. R.S. 23:921, a general prohibitory law, and Plaintiff is seeking prohibitory relief (*i.e.*, maintaining the status quo by banning litigation outside of this lawsuit). Prohibitory injunctions require a lower showing than that required for securing "mandatory" injunctions that go beyond maintaining the status quo and preventing further constitutional or statutory violations. *See JLM Couture, Inc. v. Gutman*, 24 F.4th 785, 799 n.16 (2d Cir. 2022) (holding a higher standard of proof applies when deciding whether to grant mandatory preliminary injunctive relief, which commands a party to perform an act, as opposed to prohibitory relief, which prohibits certain acts); *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1275 (10th Cir. 2022) (same); *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017). Specifically, La. R.S. 23:921 expresses Louisiana's strong public policy disfavoring restrictive covenants for employees and *prohibits* certain restraints

on business and *prohibits* choice of forum and choice of law clauses in noncompete agreements. La. R.S. 23:921. The statute even includes the word "prohibited" within its title, twice ("Restraint of business <u>prohibited</u>; restraint on forum <u>prohibited</u>; competing business; contracts against engaging in; provisions for." *Id.* (emphasis added). The deprivation of statutory freedoms – hearing the freedom of a Louisiana citizen from facing litigation in another state or under another state's law related to his employment agreements – constitutes irreparable harm. *See Opulent Life Church v. City of Holy Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (overruling trial court's denial of preliminary injunction and holding that plaintiff had demonstrated it would suffer irreparable harm against an injunction, because the deprivation of constitutional rights or statutory rights that enforce basic freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury"); *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022) (quoting above-quoted excerpt from *Opulent Life Church* with approval in recognizing plaintiffs faced irreparable harm if judicial review was denied because they were "staring down even more than 'a choice between their job(s) and their jab(s)" by "pitting their consciences against their livelihoods"); *Sambrano v. United Airlines, Inc.*, 2022 WL 486610, at *8 (5th Cir. 2022) (applying *Opulent Life Church* quote to employee lawsuit under Title VII and the Americans with Disabilities Act alleging mandatory COVID-19 vaccinations violated statutory rights against religious and medical discrimination, writing that "we do not agree that the fact that this is a statutory action instead of an action under the First Amendment meaningfully transforms what a plaintiff must show to demonstrate irreparable injury" and that a plaintiff demonstrates irreparable harm by alleging the prospect of their deprivation of constitutional *or* statutory rights).

23

60.    Plaintiff is entitled to an injunction without having to show irreparable harm because Defendant has an obligation not to enforce illegal non-compete and non-solicitation agreements.

61.    The threatened injury to Plaintiff if the temporary restraining order/preliminary injunction is not issued and enforced outweighs any potential harm to Defendant.

62.    Accordingly, Plaintiff is entitled to injunctive relief against Defendant and a declaratory judgment from this Honorable Court that certain purported restrictive covenants are invalid and unenforceable pursuant to the provisions of La. R.S. 23:921.

## COUNT III: LOUISIANA UNFAIR TRADE PRACTICES ACT

63.    Defendant's attempt to impose invalid restrictive covenants on Plaintiff by placing them in his Employment Agreement (Exhibit A) and the Operating Agreement's terms applicable to employee-Management Members (Exhibit D), proposing additional invalid restrictive covenants that were never accepted in the Proposed Addendum (Exhibit B), and threatening legal action to enforce the invalid covenants (Exhibit C), all constitute unfair trade practices prohibited by the Louisiana Unfair Trade Practices Act, La. R.S. 51:1401, *et seq.* ("LUTPA"). Additionally, any further attempt by Defendant to enforce against Plaintiff the invalid restrictions on competition contained in the Employment Agreement and/or the Operating Agreement would constitute an unfair trade practice prohibited by the LUTPA. Plaintiff, therefore, is entitled to the relief and remedies provided under the LUTPA, which includes damages and attorneys' fees incurred by Plaintiff.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all claims/issues subject to a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

4916-1733-8507 v1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jon M. Fletcher, DVM, prays that Defendant, MedVet Associates, LLC, be duly served with this *Verified Original Complaint for Declaratory Judgment, Temporary Restraining Order, Preliminary and Permanent Injunctions, and Other Relief* and that Defendant be cited to appear and make answer thereto, and that, after due proceedings are had, there be judgment entered in favor of Plaintiff, and against Defendant, as follows:

1. Issue a temporary restraining order, effective upon furnishing security in a *de minimus* amount as determined by this Court and until any date to which such order is properly extended thereafter, enjoining and prohibiting Defendant, and all others in active concern or participation with them (following Defendant's receipt of actual knowledge of the order, by personal service or otherwise) from attempting to evade this Court's jurisdiction over the matters addressed in this case through any action taken outside of this case; and from taking any action outside the proceedings of this Court calculated to enforce the choice of venue/choice of law clauses contained in the Employment Agreement with Plaintiff (Exhibit A hereto), the Operating Agreement (Exhibit D hereto), or any other restrictive covenant contained in that agreement;

2. Order that Defendant show cause, at a date and time set by this Court, why a preliminary injunction in the substance, form, and effect of the temporary restraining order described above should not issue during the pendency of these proceedings;

3. Enter a permanent injunction in the substance, form, and effect of the preliminary injunction described above;

4. Enter a declaratory judgment declaring the following:

   a. That the Employment Agreement (Exhibit A) is governed by Louisiana law;

b. That the Employment Agreement does not validly prohibit, limit, or otherwise interfere with the right or ability of Plaintiff to work for, become employed by, provide services to, contract with or otherwise do business with any entity in any industry, field, or specialty;

c. That the Employment Agreement does not validly prohibit, limit, or otherwise interfere with the right or ability of Plaintiff to engage in any business in competition with Defendant or to solicit the business of any former, current, or new "Clients," "Referral Partners," or "Training Program Participants";

d. That the restrictive covenants within the Operating Agreement as applied to Plaintiff as an employee-Management Member (Exhibit D) are governed by Louisiana law;

e. That the Operating Agreement does not validly prohibit, limit, or otherwise interfere with the right or ability of Plaintiff to work for, become employed by, provide services to, contract with or otherwise do business with any entity in any industry, field, or specialty;

f. That the Operating Agreement does not validly prohibit, limit, or otherwise interfere with the right or ability of Plaintiff to engage in any business in competition with Defendant or to solicit the business of any former, current, or new "Client, Referral Partner, supplier, vendor or independent contractor" (quoting Exhibit D);

5. Enter judgment awarding Plaintiff all legal, equitable, general, and other relief to which he may be entitled, including all attorneys' fees, costs, and expenses incurred in connection with this matter; and

26

6. Enter judgment assessing all costs of these proceedings against Defendant.

   Respectfully submitted this 27th day of January, 2026.

*/s/Scott D. Huffstetler*
Scott D. Huffstetler (#28615), T.A.
scott.huffstetler@keanmiller.com
Chelsea Gomez Caswell (#35147)
chelsea.caswell@keanmiller.com
Shearil S. Matthews (#40442)
shearil.matthews@keanmiller.com
**KEAN MILLER LLP**
400 Convention Street, Suite 700
P.O. Box 3513 (70821-3513)
Baton Rouge, LA 70821
Telephone: (225) 387-0999
Facsimile: (225) 388-9133

***ATTORNEYS FOR PLAINTIFF***

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JON M. FLETCHER, DVM** | § | **Civil Action No.** _____ |
| *Plaintiff,* | § | |
| | § | |
| **versus** | § | |
| | § | |
| **MEDVET ASSOCIATES, LLC,** | § | |
| *Defendant.* | § | **JURY TRIAL DEMANDED** |

### <u>VERIFICATION OF JON M. FLETCHER, DVM</u>

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

 BEFORE ME, the undersigned authority, duly commissioned and qualified in and for the

above parish and state, therein residing, personally came and appeared:

### JON M. FLETCHER, DVM

Who, being duly sworn, did depose and say that he is Plaintiff in the above and foregoing *Verified*

*Original Complaint for Declaratory Judgment, Temporary Restraining Order, Preliminary and*

*Permanent Injunctions, and Other Relief* and that he has read all of the allegations contained

therein and that they are true and correct to the best of his knowledge.

_____
JON M. FLETCHER, DVM

SWORN TO AND SUBSCRIBED before me, Notary Public, in *Baton Rouge*,

*Louisiana* _____, on this 27th day of January, 2026.

_____
NOTARY PUBLIC

Printed Name: Scott Deloss Huffstetler

Notary ID No.: 28615

SCOTT D. HUFFSTETLER
NOTARY PUBLIC
STATE OF LOUISIANA
LA BAR ROLL NO. 28615
MY COMMISSION IS FOR LIFE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify the foregoing was served on the following counsel for Defendant via email:

Catherine L. Strauss
Ice Miller LLP
250 West Street
Suite 700
Columbus, OH 43215
catherine.strauss@icemiller.com

***ATTORNEYS FOR DEFENDANT***

Baton Rouge, Louisiana, this 27th day of January, 2026.

*/s/Scott D. Huffstetler*
Scott D. Huffstetler