# EXHIBIT A



August 6, 2019

Jon M. Fletcher, DVM, DACVIM
jfletcher.lsu@gmail.com

Dear Dr. Fletcher,

I am pleased to confirm our offer for the Director, Post-Graduate Medical Education position. We take great pride in promoting individuals who have the talent, drive and commitment to deliver the MedVet Experience to our patients, clients, referral partners and each other.

Details of your offer are as follows:

- **Start Date:** Your targeted first day of employment will be October 28, 2019.
- **Background:** In accordance with our company policies, this offer is contingent upon completion of an acceptable background check, including references and a pre-employment drug screen. These must be complete prior to the above start date. If we do not receive the results prior to the above date, we will notify you to discuss an alternative start date
- **Salary:** Your gross annual pay will be $200,000, paid in bi-weekly installments.
- **Signing Bonus:** You will receive a sign-on bonus in the amount of $10,000. This is payable with your first pay with MedVet. This amount is subject to all applicable taxes. Should you voluntarily resign your employment during the first six months, you are responsible for repaying a prorated portion of this bonus.
- **Performance Bonus:** You are eligible for an annual performance bonus with a target of 10% of your base salary. The first year being prorated, based on full months, using your start date. Please see the included Bonus Summary as a reference to the specifics of how the plan works.
- **Benefits:** We are pleased to continue offering a comprehensive, competitive total rewards program available upon your start date. This program includes medical, dental, vision, life, flex spending, employee pet discount and disability plans. In addition, you will continue your eligibility to participate in our 401(k) retirement savings plan.
- **Paid-time Off (PTO):** You are eligible for 200 hours of PTO annually. Your initial PTO allowance for the year will be prorated based on your start date.



- **Terms:** Employment with MedVet's network of medical centers is not for any definite period of time and is terminable, with or without notice, at the will of either you or the company at any time for any reason. There shall be no contract, express or implied, of employment.

- **Non-competition:** Please see the attached Non-Compete Agreement for additional details.

Jon, I am confident you will find this new position a challenge and that it will continue to be a rewarding environment in which to work. We are equally confident the entire organization will benefit from your experience and expertise. I look forward continuing to work with you.

If you have questions, contact me at (614) 571.0851.

Sincerely,


Michael Podell, DVM, MSC, DACVIM
Chief Medical Officer



To indicate your acceptance, please sign and return this letter.

*Jon Fletcher*     8/9/2019
(Signature)
Jon M. Fletcher, DVM, DACVIM (SAIM)

**Exhibit A**

# CONFIDENTIALITY, NON-COMPETITION, NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT

This Confidentiality, Non-Competition, Non-Disclosure and Non-Solicitation Agreement (this "**Agreement**") is made as of the Effective Date (as defined in Section 2) by and between MedVet Associates, LLC ("**MedVet**") and Jon M. Fletcher, DVM, DACVIM (SAIM) ("**You**").

## RECITALS

A. MedVet desires to employ you as the Director of Post-Graduate Medical Education pursuant to the offer letter (the "**Offer Letter**").

B. In consideration of your employment, MedVet desires to receive from you certain protective covenants, and you agree to provide such covenants on the terms and conditions set forth below.

## AGREEMENT

**1.     Contractual Obligations.**  By signing this Agreement, you represent and warrant that you are not currently under any contractual obligation of any kind, written or oral, regarding the preservation or protection of confidential, proprietary trade secret information of any former employer, or any other obligation associated with the termination of any prior employment, which would prevent you from being employed by MedVet, or restrict your performance of services for MedVet.

**2.     Definitions**.  For purposes of this Agreement, the terms listed below are defined as follows:

(a)    "**Clients**" means any person or entity that, directly or indirectly, through one or more intermediaries, owns or controls the medical decision-making for an animal that received veterinary care from MedVet during the Employment Relationship.

(b)    "**Competing Business**" means any person or entity engaged in the business of providing training programs or veterinary services similar in part or in whole to those provided by MedVet, including a training program or veterinary business created, opened or developed by you.

(c)    "**Confidential Information**" shall include, without limitation, treatment forms, laboratory results, radiographs, phone logs, appointment books, telephone and address books, mailing lists, computer software programs and data, marketing information, manuals and training materials, financial planning, information about financial affairs, management or medical systems and procedures, new business development information or materials, price lists, pricing information, lists of potential customers or Training Program Participants compiled or purchased by MedVet, the names or addresses of any past or present Training Program Participants, Clients, or Referral Partners of MedVet or any Client records**,** financial information, records, techniques, research, procedures and policies, training methodologies, concepts, know-how, business secrets, trade secrets or any other proprietary information with respect to MedVet's business that is not available generally in the veterinary field or veterinary

education and that is not known to competitors of MedVet or other third parties unaffiliated with MedVet or its affiliates.

      **(d)**    **"Effective Date"** is the date you signed your Offer Letter.

      **(e)**    **"Employment Relationship"** means your employment with MedVet or any of its affiliates.

      **(f)**    **"Invention"** means ideas, designs, concepts, techniques, inventions, discoveries, and works of authorship, whether or not patentable or protectable by copyright or as a mask work and whether or not reduced to practice, including, but not limited to, devices, processes, computer programs and related source code and object code, mask works, and methods, together with any improvements thereon or thereto, derivative works made therefrom, and know-how, descriptions, sketches, drawings, or other knowledge, information, or material related thereto.

      **(g)**    "**Referral Partner**" means any person or entity who owns or manages a veterinary practice or possesses a veterinary degree and/or veterinary license and who, directly or indirectly, referred a Client to MedVet during the Employment Relationship, or any person or entity who directly or indirectly referred a Training Program Participant to MedVet during the Employment Relationship.

      **(h)**    "**Restricted Period**" means a period of one year after the termination of the Employment Relationship.

      **(i)**    **"Training Program Participant"** means any person or entity who directly or indirectly participates in a training program, regardless of role in the training program or extent of participation.

    **3.**    **Confidential Information and Goodwill Covenant.**

      **(a)**    You understand that while employed by MedVet, you will gain close contact and cultivate and foster business relationships with Training Program Participants, Clients, and Referral Partners on behalf of MedVet, provide management or supervisory services and/or technical assistance to individuals employed by MedVet, and gain certain knowledge, skills, or experience related specifically to the business of MedVet. You further understand that MedVet's Confidential Information and goodwill is critical to MedVet's ability to compete, and that if MedVet's Confidential Information and goodwill were used in competition against MedVet, MedVet would necessarily experience serious, if not irreparable harm, lose its Confidential Information and its unique competitive advantage.

      **(b)**    You understand and agree that, except as otherwise required by law (after first notifying MedVet and giving it reasonable opportunity to object), you will not, during the Employment Relationship, or at any time thereafter, misappropriate, exploit, or use for any purpose not specifically related to the Employment Relationship, or disclose to any person other than MedVet or its affiliates or employees acting on behalf of MedVet or its affiliates, any Confidential Information.

      **(c)**    You agree that the Confidential Information will not be removed from MedVet's place of business. Upon the termination of the Employment Relationship for any reason whatsoever, you will return to MedVet all Confidential Information (whether furnished by MedVet or prepared by you in

the course of the Employment Relationship), and you will neither make nor retain copies of any Confidential Information after the termination of the Employment Relationship.

**(d)** You agree that any Inventions created, conceived, developed, or reduced to practice, in whole or in part, by you, either solely or in conjunction with others, during or after the Employment Relationship that arise in any way from the use of or reliance on any Confidential Information or any of MedVet's business relationships with Training Program Participants, Clients, or Referral Partners, that relate to MedVet's business or MedVet's demonstrably anticipated business, research, or development, or that result from any work performed by you for, on behalf of, or at the direction of MedVet, shall belong exclusively to MedVet and shall be deemed part of the Confidential Information for purposes of this Agreement, whether or not fixed in a tangible medium of expression. You agree that all rights, title, and interest in and to all such Inventions, including, but not limited to, intellectual property rights, shall vest and reside in, and shall be the exclusive property of, MedVet. Without limiting the foregoing, you agree that any and all such Inventions shall be deemed to be "works made for hire" and that MedVet shall be deemed the sole and exclusive owner thereof. In the event and to the extent that any such Inventions are determined not to constitute "works made for hire" or that, by operation of law or otherwise, any right, title, or interest in or to the Inventions, including, but not limited to, any intellectual property rights, vests not in MedVet, but, rather, in you, you hereby: (i) irrevocably and unconditionally assign and transfer to MedVet, all rights, title, and interest in and to any such Inventions, including, but not limited to, all Intellectual Property Rights and (ii) forever waive and agree never to assert all such rights, title, and interest. You agree that <u>Exhibit A</u> attached hereto sets forth a complete list of all Inventions that you have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that you consider to be my property or the property of third parties, and that you wish to have excluded from the scope of this Agreement (collectively referred to as "<u>Prior Inventions</u>"). Prior Inventions are excluded from the scope of this Agreement.

**(e)** Nothing in this Agreement prohibits you from reporting possible violations of federal or state law or regulation to any governmental agency or entity or making other disclosures that are protected under the whistleblower provisions of federal law or regulation. You do not need the prior authorization of MedVet to make any such reports or disclosures, and you are not required to notify MedVet that you have made any such reports or disclosures.

**4.     Non-Competition Covenant.**

**(a)** The parties agree that:

**1.** Because of your specific training and education, your services are of an unusual character which have a unique value to MedVet;

**2.** An important part of your compensated services will be to create intellectual property and goodwill for MedVet through your creation of a multi-year strategy for all postgraduate medical services training programs, your creation and implementation of new training programs, and your personal and frequent contact with Training Program Participants, Clients, and Referral Partners, as well as others having business relationships with MedVet, including but not limited to veterinary schools and colleges, and that this goodwill, which is a vital and proprietary asset of MedVet, is likely to follow you upon termination of the Employment Relationship;

3 | P a g e

CO\6192140.3

    **3.** You are being paid in pertinent part to develop and maintain business relationships with Training Program Participants, Clients, Referral Partners, and others having business relationships with MedVet, including but not limited to veterinary schools and colleges, and MedVet's goodwill shall not be converted to your personal use and traded upon immediately upon or soon after termination of the Employment Relationship;

    **4.** MedVet has a right to protect its business relationships, intellectual property, and training programs, including its Training Program Participant base, Client base and its Referral Partner base, developed, nurtured, and maintained over a long period of time and, therefore, it is appropriate to restrict your contact or your rendering of services to Training Program Participants, Clients, and Referral Partners in North America for a reasonable period after your departure from MedVet; and

    **5.** You agree to accept employment with MedVet with full knowledge of the above-cited factors and the protectable business interests essential to the continued well-being of MedVet's operation, and agree to abide by the protective covenants set forth in this Agreement.

  **(b)** During the Employment Relationship, you agree not to directly or indirectly, as an officer, director, employee, independent contractor, or equity owner of any other corporation, partnership or other organization, engage in any Competing Business in North America.

  **(c)** In consideration of the compensation and benefits that you will receive, and your recognition that you will be provided access to Confidential Information related to the nature of MedVet's business, and to a Training Program Participant base, Client base, and Referral Partner base and their specific needs and interests, and in exchange for the professional education, experience, training to be obtained while working for MedVet, you agree that during the Restricted Period, you will not engage in any capacity, directly or indirectly, in a Competing Business in North America.

  **(d)** You agree to accept employment with MedVet under the terms of this Agreement; provided, however, you hereby acknowledge and agree that the terms and restrictions of this Section 4 shall not apply after the term of this Agreement in the case of you:

    **1.** practicing internal medicine anywhere within North America;

    **2.** training residents in internal medicine in the location where you perform the majority of your work; and

    **3.** taking a leadership role in an institution of higher education anywhere in North America.

 **5.** **Non-Solicitation of Training Program Participants, Clients and Referral Partners Covenant**. You agree that during the Employment Relationship and during the Restricted Period, you will not, directly or indirectly: (a) dissuade Training Program Participants, Clients or Referral Partners from utilizing the services of MedVet; or, (b) solicit or otherwise divert or interfere with business relationships between MedVet and any Training Program Participant, Client, Referral Partner, supplier, vendor or independent contractor or attempt to assist any third party in doing so.

4 | P a g e

CO\6192140.3

**6.     Non-Solicitation of Employees Covenant.**  You further agree that during the Employment Relationship and during the Restricted Period, you will not, directly or indirectly, recruit or solicit employment of any employee or agent of MedVet or any of its affiliates, or of any person who had been an employee or agent of MedVet during the Employment Relationship and whose employment or agency terminated within the previous three months, or otherwise induce such employee or agent to leave the employment or agency of MedVet, to become an employee or agent  of or otherwise be associated with you or any company or business with which you are or may become associated.

**7.     Equitable Relief and Other Remedies upon Breach.**  Each party hereto agrees that in the event the other party breaches or threatens to breach any of the terms of this Agreement, the non-breaching party will be entitled to any and all remedies at law and in equity, which remedies may be cumulative, and will include, but will not be limited to, the right to a preliminary or permanent injunction in order to prevent the continuation of harm, and money damages insofar as they can be determined. No bond or other security will be required of MedVet in connection with its obtaining injunctive relief. The parties further agree that in the event there is any litigation or proceeding between MedVet and You with respect to the subject matter of this Agreement, each of the parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with such litigation or proceeding. You agree that the restricted periods for the protective covenants described above shall automatically be extended by the length of any time that you fail to comply with the applicable protective covenant.

**8.     Reasonableness of Protective Covenants.**  You have carefully read and considered the provisions of this Agreement and, having done so, agree that the protective covenants imposed by this Agreement are reasonable, necessary to protect the Confidential Information and goodwill of MedVet, and will not impose an undue hardship on you.  You acknowledge and agree that, if any portion of the restrictions set forth in this Agreement should, for any reason whatsoever, be declared invalid by a court of competent jurisdiction, the validity or enforceability of the remainder of such restrictions shall not be adversely affected, but rather, if permitted by applicable law, such court shall reform the provision deemed invalid so that it shall provide MedVet with the maximum protection of its business interests allowed by law and you agree to be bound by this Agreement as modified.

**9.     Waivers**.  All waivers of any term, condition, obligation or provision of this Agreement must be in writing.  No waiver of any breach or anticipated breach of any provision of this Agreement will be deemed a waiver of any other contemporaneous, preceding or succeeding breach or anticipated breach, whether or not similar, on the part of the same party.

**10.     Assignment; Amendment.**  This Agreement may not be transferred or assigned by you. MedVet may transfer or assign this Agreement to any of its affiliates.  No amendment of this Agreement shall be valid unless in writing and signed by MedVet and you.

**11.     Governing Law; Venue**.  This Agreement shall be governed by the laws of the State of Ohio without regard to conflicts of law principles.  Any legal action or other legal proceeding relating to this Agreement or the enforcement of any provision of this Agreement may be brought or otherwise commenced in any state or federal court located in the State of Ohio. You expressly and irrevocably consent and submit to the non-exclusive jurisdiction of each state and federal court located in the county where any MedVet facility is located (and each appellate court located in the state where any such county is located) in connection with any such legal proceeding, and agree that each state and federal court

CO\6192140.3

located in any such county (and each appellate court located in any such state) shall be deemed to be a convenient forum.

12.  **Entire Agreement and Binding Effect.**  This Agreement contains the entire and exclusive agreement of the parties with respect to the subjects covered and supersedes and preempts any prior or contemporaneous understandings, agreements or representations between the parties, written or oral, which may have been related to this subject matter in any way. This Agreement is binding upon you and MedVet and our respective legal representatives, heirs, distributees, successors and assigns.

This Agreement may be executed in one or more counterparts (including by facsimile or other electronic method), each of which shall be deemed an original but all of which, together, shall constitute one and the same instrument.

**MedVet:**

MedVet Associates, LLC

By: *Michael Podell*  8/9/2019

**Michael Podell, DVM, MSC, DACVIM**
**Chief Medical Officer**

**You:**

*Jon Fletcher*  8/9/2019

**Jon M. Fletcher, DVM, DACVIM (SAIM)**

6 | Page

CO\6192140.3

EXHIBIT A

PRIOR INVENTIONS

TO: MEDVET ASSOCIATES, LLC

FROM: Jon M. Fletcher, DVM, DACVIM (SAIM)

DATE: August \_\_\_, 2019

SUBJECT: Prior Inventions

**1.** Except as listed in Section 2 below, the following is a complete list of all inventions or improvements relevant to the subject matter of my employment by **MEDVET ASSOCIATES, LLC** ("**MedVet**") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by MedVet:

☐ No inventions or improvements.

☐ See below:

_____

_____

_____

☐ Additional sheets attached.

**2.** Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| **Invention or Improvement** | **Party(ies)** | **Relationship** |
|---|---|---|
| 1. _____ | _____ | _____ |
| 2. _____ | _____ | _____ |
| 3. _____ | _____ | _____ |

☐ Additional sheets attached.

Date: 8/9/2019

Signature: *Jon Fletcher* (DocuSigned by: FCD11E90D69A4B0...)

Jon M. Fletcher, DVM, DACVIM (SAIM)
Name of Employee (typed or printed)

1 | P a g e

CO\6192140.3