**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


JON M. FLETCHER, DVM

VERSUS

MEDVET ASSOCIATES, LLC

CIVIL ACTION
26-101-SDD-RLB


## <u>RULING</u>

This matter is before the Court on the Cross-Motions for Summary Judgment filed by Plaintiff, Jon M. Fletcher, DVM ("Fletcher")(Plaintiff has filed a Motion for Partial Summary Judgment)[1] and Defendant, MedVet Associates, Inc. ("MedVet").[2] The Parties have opposed each other's motions.[3]  For the reasons that follow, Fletcher's Motion for Partial Summary Judgment will be granted, and MedVet's Motion for Summary Judgment will be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The material facts of this matter are undisputed. MedVet is a limited liability company organized under Ohio law with its corporate headquarters in Ohio.[4] Fletcher, a Louisiana resident, was formerly employed by MedVet until he resigned on January 30, 2026.[5] MedVet employs more interns, residents, and ECMP veterinarians in Ohio than any other individual state, and it claims that a significant amount of Fletcher's work was

---

[1] Rec. Doc. 22. Plaintiff's Motion is labeled as a Motion for Partial Summary Judgment.
[2] Rec. Doc. 23.
[3] Rec. Docs. 25, 26.
[4] Rec. Doc. 23-4, ¶ 4.
[5] Rec. Doc. 22-8, ¶¶ 1-2.

to develop relationships with veterinarian students and schools and recruit them to train at MedVet in Ohio.[6]  In 2025, MedVet employed 93 people across all training programs; 38 of them were employed at a MedVet located in Ohio, and MedVet attests only 3 were employed at a MedVet in Louisiana.[7]  Despite this claim, in its Response to Requests for Admissions, Interrogatories, and Requests for Production, MedVet was asked to "[s]tate the total number of employees you employed in the State of Louisiana as of December 31, 2025, December 31, 2024, December 31, 2023, December 31, 2022, December 31, 2021, and December 31, 2021."[8]  Although MedVet objected to the request as "overbroad and irrelevant," MedVet responded as follows:

•December 31, 2025: 211

•December 31, 2024: 210

•December 31, 2023: 245

•December 31, 2022: 235

•December 31, 2021: 219

•December 31, 2020: 203[9]

Fletcher traveled to Ohio to interview for this position.[10] Upon his hire, Fletcher was required to execute an Employment Agreement which included an Ohio choice of law provision and choice of venue provision selecting "any state or federal court located in the State of Ohio" and "each state and federal court located in the county where any

---

[6] Rec. Doc. 23-4, ¶ 11. Fletcher denies that a "significant amount" of his work was to develop relationship with veterinarian students and schools and recruit them to train at MedVet in Ohio; rather, Fletcher contends he was not a recruiter but a program administrator, and he interacted with programs around the country, not just Ohio. Rec. Doc. 26-7, ¶¶ 13, 16.
[7] Rec. Doc. 23-4, ¶ 12.
[8] Rec. Doc. 22-6, RFI No. 7.
[9] *Id.* MedVet admits this response is correct.  Rec. Doc. 25-1, No. 10.
[10] Rec. Doc. 23-5.

MedVet facility is located."[11] Fletcher negotiated[12] and executed the Employment Agreement while he was a Louisiana resident, and for the entirety of his employment with MedVet, he worked from his home in East Baton Rouge Parish, Louisiana.[13] During the entirety of his employment, Fletcher never had an assigned desk or office at any MedVet Ohio locations.[14] MedVet paid Louisiana, not Ohio, payroll taxes in connection with Fletcher's employment.[15] Based on MedVet's interrogatory responses, while Fletcher was employed by MedVet, from 2020 through 2025, MedVet employed hundreds of Louisiana residents besides Fletcher.[16]

Also during this time span, MedVet operated two veterinary hospitals in New Orleans, Louisiana, open 24 hours a day, 7 days a week.[17] Fletcher's work supported MedVet's hospitals and programs throughout the country.[18] MedVet's website advertises "multistate operations" and lists 40 veterinary hospitals throughout the United States.[19]

During his tenure with MedVet, Fletcher travelled less than fifteen times to Ohio for any business matters with MedVet.[20] Fletcher reported to various supervisors who worked remotely for MedVet, respectively located in North Carolina, Michigan, and Ohio.[21] Fletcher was primarily supervised by Mike Podell ("Podell") from Ohio for the majority of his tenure; he was never supervised by any employee in Louisiana.[22] MedVet's

---

[11] Rec. Doc. 22-8, ¶ 3; Rec. Doc. 22-3, Sec. 11.

[12] Rec. Doc. 26-7, ¶ 3. Although MedVet contends Fletcher negotiated the Employment Agreement in Ohio, its citations do not support this fact. *See* Rec. Doc. 23-3, No. 6 (citing Rec. Doc. 23-4, ¶ 7 and Rec. Doc. 23-5, No. 11).

[13] *Id.* at ¶ 4

[14] Rec. Doc. 22-6, Response RFA No. 1.

[15] *Id.* at Response RFA Nos. 3-4.

[16] *Id.* at Response RFA Nos. 9, 29; Response to Int. No. 7.

[17] *Id.* at Response RFA No. 5.

[18] *Id.* at Response RFA No. 13; Response to Int. No. 9.

[19] Rec. Doc. 22-7.

[20] Rec. Doc. 22-6, Response RFA No. 11.

[21] *Id.* at Response RFA Nos. 19, 21, 22.

[22] Rec. Doc. 23-5, INT No. 11.

Chief Executive Officer, Linda Lehmkuhl, worked for MedVet remotely from the state of Utah during Fletcher's employment.[23]

The Employment Agreement Fletcher entered into with MedVet contains non-compete and non-solicitation clauses that purport to restrict Fletcher's post-termination activities.[24] The non-compete provision defines the restricted territory as "North America."[25] Fletcher contends the Employment Agreement contains no geographic limitation based on MedVet's representation that "it does not possess any documentation identifying specific parishes, municipalities, or parts thereof as the geographic scope of the non-compete or non-solicitation agreements."[26]

Fletcher gave MedVet advance notice of his resignation,[27] to which MedVet responded by presenting Fletcher with a new "Addendum to Offer Letter and Confidentiality, Non-Competition, Non-Disclosure and Non-Solicitation Agreement" to try to get Fletcher to agree to modifications to his August 2019 Employment Agreement (the "Proposed Addendum").[28] Fletcher refused to sign the Proposed Addendum.[29] After this refusal, Fletcher received a letter from MedVet's attorneys advising Fletcher that the terms of the Employment Agreement remained in effect and essentially threatening

---

[23] Rec. Doc. 22-6, Response RFA No. 20.

[24] Rec. Doc. 22-3.

[25] *Id.* at Sec. 4(a)(5)(c) ("…you agree that during the Restricted Period, you will not engage in any capacity, directly or indirectly, in a Competing Business in North America."); Rec. Doc. 22-6, Response RFP No. 34 (Defendant representing "it does not possess any documentation identifying specific parishes, municipalities, or parts thereof as the geographic scope of the non-compete or non-solicitation agreements").

[26] Rec. Doc. 22-3; Rec. Doc. 22-6, Response RFP No. 34. MedVet maintains North America is the geographic limitation set forth in the Agreement.

[27] Rec. Doc. 22-8, ¶ 5. MedVet attempts to qualify this statement but fails to provide a citation for the qualification. *See* Rec. Doc. 25-1, ¶ 21.

[28] Rec. Doc. 22-4. MedVet attempts to qualify this statement but fails to provide a citation for the qualification. See Rec. Doc. 25-1, ¶ 22.

[29] Rec. Doc. 22-8, ¶¶ 6-7.

litigation should he not comply with its terms.[30]

Fletcher has expressly rejected the choice of law/ jurisdiction provision set forth in the Employment Agreement.[31] Fletcher attested that if he is compelled to litigate this matter outside of Louisiana, and if this Employment Agreement is enforced, he will sustain substantial financial hardship.[32]

Fletcher initiated this lawsuit by filing a Verified Complaint and a Motion for TRO/Preliminary Injunction and/or for Declaratory Relief,[33] asking the Court to enjoin MedVet from initiating litigation against him in Ohio pursuant to the Employment Agreement's forum selection/jurisdiction provision and further to declare the Employment Agreement null and void under Louisiana law. The Court held a status conference and, with the consent of the Parties, deferred ruling on Fletcher's motion, allowed the Parties to engage in limited discovery, and set the matter for a bench trial to be held May 28, 2026. The Court provided deadlines for the Parties to file dispositive motions,[34] and both Parties elected to file summary judgment motions.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[35] This determination is made "in the light most favorable to the

---

[30] Rec. Doc. 22-5.
[31] Rec. Doc. 22-8, ¶ 9.
[32] *Id.* at ¶ 10.
[33] Rec. Doc. 3.
[34] See Rec. Docs. 8, 19.
[35] FED. R. CIV. P. 56(a).

opposing party."[36] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial."[37] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[38] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[39]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[40] All reasonable factual inferences are drawn in favor of the nonmoving party.[41] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[42] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment."[43]

---

[36] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

[37] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[38] *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[39] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[40] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

[41] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[42] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).

[43] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).

### B.      Declaratory Judgment Act

"The Declaratory Judgment Act provides that, 'in a case of actual controversy within its jurisdiction. . .any court of the United States. . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'"[44] The Court must ask "(1) 'whether an 'actual controversy' exists between the parties' in the case; (2) whether it has authority to grant declaratory relief; and (3) whether 'to exercise its broad discretion to decide or dismiss a declaratory judgment action.'"[45] Moreover, a declaratory judgment "cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts. . . ."[46] "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[47]

### C.  Choice of Law Analysis[48]

The Employment Agreement at issue provides an Ohio choice of law provision and choice of venue provision selecting "any state or federal court located in the State of Ohio" and "each state and federal court located in the county where any MedVet facility is located."[49] The threshold issue in this case is which state law applies: Ohio or Louisiana?

---

[44] *Donelon v. Altman*, 2021 WL 4205654, at *3 (M.D. La. Sept. 15, 2021) (citing *Frye v. Anadarko Petroleum Corp.,* 953 F.3d 285, 293–94 (5th Cir. 2019)).

[45] *Id* (citing *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).

[46] *Id* (citing *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009)).

[47] *Id* (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

[48] Despite Fletcher's protestations that courts need not perform a general choice of law analysis but should proceed directly to application of La. R.S. 23:921 in these types of cases (*See* R.D. 22-1, p. 6), the Court will follow the wealth of jurisprudence and consider La. Civ. Code Arts. 3537 & 3540. *See NCH Corp. v. Broyles*, 749 F.2d 247 (5th Cir. 1985); *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F.Supp.2d 521 (2007); *Technical Industries, Inc. v. Banks*, 419 F.Supp.2d 903 (2006); *Diamond v. Shelton Services, Inc.*, 713 F.Supp.3d 257 (E.D. La. 2024); *Lobrano v. C.H. Robinson Worldwide, Inc.*, No. 10-cv-775, 2011 WL 52602 (W.D. La. Jan. 7, 2011); *Bell v. L.P. Brown Co., Inc.*, No. 14-02772, 2015 WL 429973 (W.D. La. Feb. 2, 2015). The choice of law analysis does not alter the Court's findings in this case in favor of Fletcher.

[49] Rec. Doc. 22-8, ¶ 3; Rec. Doc. 22-3, Sec. 11.

As an initial matter, the Employment Agreement contains a choice of law clause dictating that any disputes arising out of the Agreement will be governed by Ohio law. However, in determining which state's law applies in a diversity case, a federal district court applies conflicts of law principles of the forum state: here, Louisiana.[50] Louisiana law provides that a choice of law clause in an employee's contract is null and void unless ratified by the employee after the occurrence of an incident that is the subject of the dispute.[51] Here, it is undisputed that Fletcher did not ratify the forum selection clause in the Employment Agreement after this dispute arose. Accordingly, the forum selection clause is unenforceable under Louisiana law.[52]

Next, the Court must determine what state's law to apply in analyzing the employment agreement. To determine which state law applies, the Court first looks to Louisiana Civil Code Article 3540, which states:

> All other issues of conventional obligations are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

---

[50] *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[51] *See* La. Rev. Stat. § 23:921(A)(2).

[52] *See Shelter Mut. Ins. Co. v. Rimkus Consulting Group, Inc. of La.*, 148 So.3d 871, 878 (La.2014), wherein the Louisiana Supreme Court held that, while "forum selection clauses are generally enforceable and are not per se violative of public policy in Louisiana," La.Rev.Stat. 23:921A(2) "prohibits forum selection clauses in employment contracts unless the choice of forum clause 'is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is subject to the civil or administrative action.'" *See also Kimball v. HEALTHCAREfirst*, 2012 WL 3061795, at *1 (M.D. La. July 24, 2012) ("As this Court finds Plaintiff did not ratify the forum selection clause after she left HEALTHCAREfirst and that enforcement of the clause otherwise would be contrary to Louisiana's strong public policy to prevent individuals from depriving themselves of the ability to work, the forum selection clause is null and void."); *Waguespack v. Medtronic, Inc.,* 185 F.Supp.3d 916, 2016 WL 2621969, at *9 (M.D. La. May 6, 2016) ("Plaintiffs did not ratify the forum selection clauses in the Employment Agreements after they left Medtronic, and enforcement of the clauses would contravene a strong public policy of Louisiana. The case has a stronger connection to Louisiana than Minnesota, and therefore the suit will stay in the Middle District of Louisiana. The Motion to Transfer is DENIED."); *Bell v. L.P. Brown Co., Inc.*, 2015 WL 429973, at 6 (W.D. La. Feb. 2, 2015) (agreeing "with other federal district courts addressing this issue" and finding a forum selection clause in a noncompetition agreement null and void under La. R.S. § 23:921(A)(2) because plaintiff "did not expressly, knowingly, and voluntarily agree to or ratify the forum selection clause in the non-compete agreement after his resignation.").

Louisiana Civil Code Article 3537 states generally that an issue of conventional obligations is "governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." Article 3537 continues:

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

The Court must also examine whether application of Ohio law would significantly impair Louisiana's policies in protecting its employees from restrictions on the common right to work. Louisiana's statutory and jurisprudential law demonstrate a strong public policy against restrictions on Fletcher's "common right" to work in Louisiana.[53]

This strong public policy to protect employees from restrictive covenants on the employees' right to work is evidenced by Louisiana Revised Statute § 23:921(A)(2). This statute prevents employers and employees from choosing the state law that will apply to employment agreements, providing that:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

---

[53] *See SWAT 24 Shreveport Bossier, Inc. v. Bond*, 2000–1695 (La.6/29/01), 808 So.2d 294, 298.

Through this statute, the Louisiana legislature effectively determined that contracts for employment should be governed by the laws of the state whose policies would be most severely impaired which, in most instances for employment contracts in Louisiana, will be Louisiana. Indeed, the Louisiana Supreme Court has remarked that "Louisiana has long had a strong public policy disfavoring" non-compete and non-solicit restrictive covenants like those in the Employment Agreement at issue here.[54] The purpose this strong public policy "is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden."[55]

Generally, Louisiana state courts, noting Louisiana's strong public policy against covenants in derogation of the common right to work, require strict compliance with the geographic and other limitations of Louisiana Revised Statute § 23:921. A majority of Louisiana state courts have interpreted Louisiana Revised Statute § 23:921 to require that an employment contract specifically list the parishes or municipalities affected by the non-compete or non-solicit agreement.[56] The federal Fifth Circuit has similarly recognized that under Louisiana law, a "contract seeking to fit into an exception to this rule must strictly comply with the requirements contained in the statute."[57] This principle has been applied by all federal district courts in Louisiana as noted throughout this ruling.

---

[54] *Id.*

[55] *Id.*

[56] *See, e.g., Hose Specialty & Supply Mgmt. Co., Inc. v. Guccione,* 2003–823 (La.App. 5 Cir.2003), 865 So.2d 183, 194; *Aon Risk Servs. of La., Inc. v. Ryan*, 2001–614 (La.App. 4 Cir. 1/23/2002), 807 So.2d 1058, 1061–62; *Kimball v. Anesthesia Specialists of Baton Rouge, Inc.*, 2000–1954 (La.App. 1 Cir. 9/28/01), 809 So.2d 405, 412–13; *Comet Indus., Inc. v. Lawrence*, 600 So.2d 85, 88 (La.App. 2 Cir.1992).

[57] *Team Environmental Servs., Inc. v. Addison*, 2 F.3d 124, 126–27 (5th Cir.1993) (quoting *Comet Indus., Inc. v. Lawrence*, 600 So.2d at 85, 88 (La.App. 2 Cir.1992)).

MedVet contends Ohio law should apply to this matter for the following reasons. Fletcher worked in a remote role within a multistate operation that MedVet directed from Ohio.[58] Fletcher traveled to Ohio for his interview.[59] Fletcher reported to supervisors based in Ohio, particularly Podell who supervised Fletcher for the majority of his employment, received assignments from Ohio, traveled to Ohio for company functions, and was never supervised by anyone in the State of Louisiana.[60] MedVet argues that, although Plaintiff performed his duties from his home in Louisiana, the Department of Labor defines an employee's worksite as the location of the supervisor from which the employee receives work – in this instance, mostly Ohio.[61] MedVet maintains that Fletcher's role had nothing to do with Louisiana; rather, his role was recruiting veterinarian students and residents to MedVet locations around the country.[62] MedVet contends it employs more interns, residents and ECMP veterinarians in Ohio than any other individual state, meaning that a significant amount of Fletcher's work was to develop relationships with veterinarian students and schools and recruit them to train at MedVet in Ohio.[63]

Regarding public policy interests, MedVet argues that both states disfavor none-competition and similar restrictive covenants.[64]   But MedVet contends Ohio's public policies would face a greater substantial impairment than Louisiana's because of

---

[58] Rec. Doc. 23-4, ¶ 9.

[59] Rec. Doc. 23-5.

[60] Rec. Doc. 22-6, Response RFA Nos. 11, 19, 21, & 22.

[61] Rec. Doc. 23-2, p. 6 (citing *Schexnaydre v. Aries Marine Corp.*, No. 06-0987, 2009 WL 222958, at *2 (W.D. La. 2009) (citing 29 C.F.R. § 825.111(a)(2)).

[62] Rec. Doc. 23-4, ¶¶ 9-13.

[63] *Id.* at ¶ 11.

[64] Rec. Doc. 23-2, pp. 6-7 (citing *Hubman Supply Co. v. Irvin*, 119 N.E.2d 152, 155 (Ohio Com. Pl. 1953); *see also Life Line Screening of Am., Ltd. v. Calger*, 881 N.E.2d 932 (Ohio Com. Pl. 2006)).

MedVet's "overwhelming presence in Ohio and Fletcher's activities toward and for the benefit of Ohio."[65]

Although Fletcher decries the necessity of a choice of law analysis since La. R.S. 23:921 is directly applicable to this case, he nevertheless points out that the overwhelming majority of Louisiana federal and state courts addressing synonymous facts apply Louisiana law. Fletcher maintains there is no evidence to refute that Plaintiff was a resident of Louisiana at all times of his employment with MedVet; he spent the vast majority of his time working from his home in Louisiana; and he executed the Employment Agreement at his home in Louisiana.[66]  Additionally, MedVet's own website demonstrates that it has 40 locations throughout the United States, thus undermining its claim that its exclusive, concentrated interests are in Ohio.[67]

Both parties cited the decision by the Eastern District of Louisiana in *Giglio v. Shipyard Supply Acquisition Corp.*[68]  In *Giglio*, a former employee sued his former employer, seeking a declaratory judgment that several provisions in his employment agreement were unenforceable under Louisiana law.[69] The agreement required 90 days'

---

[65] *Id.* at p. 7.

[66] Rec. Doc. 26-7, ¶ 3. Although MedVet contends Fletcher negotiated the Employment Agreement in Ohio, its citations do not support this fact. *See* Rec. Doc. 23-3, No. 6 (citing Rec. Doc. 23-4, ¶ 7 and Rec. Doc. 23-5, No. 11).

[67] Rec. Doc. 22-7. In MedVet's locations map (www.medvet.com/locations), it lists two veterinary hospitals in the State of Louisiana, including in Mandeville and New Orleans. Its location map lists a total of 40 hospitals currently operated throughout the United States, including (by city/region alphabetically): (1) Akron, Ohio; (2) Asheville, North Carolina; (3) Atlanta, Georgia; (4) Austin, Texas; (5) Campbell, California; (6) Chicago, Illinois; (7) Cincinnati, Ohio;  (8) Cleveland, Ohio; (9) Columbus, Ohio; (10) Commerce, Missouri; (11) Dallas, Texas; (12) Dayton, Ohio; (13) Diley Hill/Canal Winchester, Ohio; (14) Frisco, Texas; (15) Grapevine, Texas; (16) Hilliard, Ohio; (17) Houston, Texas; (18) Indianapolis, Indiana; (19) Jupiter, Florida; (20) Lexington, Kentucky; (21) Mahoning Valley, Ohio; (22) Mandeville, Louisiana; (23) Mobile, Alabama; (24) Mountain View, California; (25) New Albany, Ohio; (26) New Orleans, Louisiana; (27) North Shore Chicago, Illinois; (28) Northern (Sunset), Utah; (29) Northern (Manassas), Virginia; (30) Norwalk, Connecticut; (31) Phoenix, Arizona; (32) Pittsburgh, Pennsylvania; (33) Salt Lake City, Utah; (34) Sandy, Utah; (35) Silicon Valley (San Jose), California; (36) Toledo, Ohio; (37) Vancouver, Washington; (38) West Chester Township, Ohio; (39) WestVet Boise (Garden City), Idaho; and (40) WestVet Meridian, Idaho.

[68] No. 2:22-CV-02380, 2022 WL 4106454 (E.D. La. Sept. 8, 2022).

[69] *Id.* at *1.

notice before resignation, contained non-compete and non-solicitation clauses, and included a Texas choice of law and Harris County, Texas forum selection clause.[70] The employee resigned and joined another company, which Shipyard deemed violative of the employment agreement, and the employee sued in Louisiana state court. Shipyard removed the matter to federal court, arguing that Texas law governed the employment agreement.[71]

The Eastern District of Louisiana analyzed the Louisiana employee's substantial contacts with Louisiana and Louisiana's strong public policy governing restrictive covenants and held that Louisiana law applied to the contract. This was based on the fact that the employee was a Louisiana resident; he worked primarily in Louisiana, Shipyard conducted business in Louisiana; and the alleged competitive conduct and impact of enforcement would occur in Louisiana.[72] Notably, the *Giglio* court stated:

> Shipyard Supply does not cite a single case wherein a court in Louisiana applied the law of another state to restrictive covenants entered into in Louisiana, by a Louisiana resident employee, for work performed in Louisiana, and which purports to restrict competition in Louisiana … Given the strong interest Louisiana has repeatedly emphasized in regulating this kind of restrictive covenant, and Giglio's status as a Louisiana resident who worked for Shipyard Supply almost entirely in Louisiana, the Court must apply Louisiana law to the Agreement. *See, e.g., Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 483 F. Supp. 2d 521, 529 (E.D. La. 2007) ("The Court finds that Louisiana law governs the interpretation of the Employment Contract given Louisiana's strong public policy disfavoring non-compete contracts, and because the contract was executed in Louisiana by a Louisiana domiciliary working under the contract in this state."); *Smith v. Commercial Flooring Gulf Coast*, 2019-0502 (La. App. 4 Cir. 10/9/19) ("Historically, Louisiana jurisprudence has had a strong public policy against non-compete agreements between employers and employees, strictly construing such agreements against the party seeking enforcement."). ("[Defendant] does not cite a single case wherein a court in Louisiana applied the law of another state to restrictive covenants entered into in

---

[70] *Id.*
[71] *Id.*
[72] *Id.* at *2.

Louisiana, by a Louisiana resident employee, for work performed in Louisiana, and which purports to restrict competition in Louisiana.") (rejecting Texas choice-of-law provision).[73]

Ultimately, the court ruled in favor of the employee because Louisiana had materially greater contacts with the dispute than Texas and because enforcing Texas law would undermine Louisiana's strong policy narrowly restricting non-compete agreements.[74]

MedVet attempts to distinguish *Giglio* based on the facts it argued above. Fletcher argues that *Giglio* is directly on point, and like in *Giglio*, MedVet does not cite a single decision in support of its argument. The Court finds that the facts in *Giglio*, while not identical, are not sharply distinguishable from the facts present here. The undisputed summary judgment evidence establishes that Fletcher negotiated[75] and executed the Employment Agreement while he was a Louisiana resident, and for the entirety of his employment with MedVet, he worked from his home in East Baton Rouge Parish, Louisiana.[76] Fletcher never had an office at any MedVet Ohio locations,[77] and MedVet paid Louisiana, not Ohio, payroll taxes in connection with Fletcher's employment.[78] During Fletcher's employment with MedVet, from 2020 through 2025, MedVet admitted it employed hundreds of Louisiana residents besides Fletcher.[79] During Fletcher's employment, MedVet operated two veterinary hospitals in New Orleans, Louisiana, open 24 hours a day, 7 days a week.[80] Fletcher's work supported MedVet's hospitals and

---

[73] *Id.*
[74] *Id.*
[75] Rec. Doc. 26-7, ¶ 3.
[76] *Id.* at ¶ 4.
[77] Rec. Doc. 22-6, Response RFA No. 1.
[78] *Id.* at Response RFA Nos. 3-4.
[79] *Id.* at Response RFA Nos. 9, 29; Response to Int. No. 7.
[80] *Id.* at Response RFA No. 5.

programs throughout the country, not limited to Ohio.[81]  Fletcher was primarily supervised by Podell; however he was also supervised by MedVet employees in North Carolina and Michigan. It is undisputed that the substantial work performed by Fletcher on behalf of MedVet was from Fletcher's home in Louisiana. Citing *Schexnaydre v. Aries Marine Corp.*,[82] and 29 C.F.R. § 825.111(a)(2), MedVet attempts to apply a Department of Labor regulation stating that an employee's worksite is considered to be wherever the employee's supervisor is located; however, the *Schexnaydre* court was tasked with determining whether the employee was eligible under the Family and Medical Leave Act ("FMLA"), and this decision has absolutely no application here. Accordingly, the Court finds that Louisiana has far greater contacts with the employment transaction in this case than does Ohio.

Returning to the Louisiana Civil Code Article 3540 analysis, the Court finds that application of Ohio law would contravene the public policy of Louisiana. Ohio law permits employers to impose extraordinarily broader non-compete and non-solicit restrictions on employees, such as nationwide geographical limitations where reasonable, in direct contravention of Louisiana's strong public policy.[83]  Thus, the Court finds that enforcing Ohio law here would undermine Louisiana's strong public policy narrowly restricting non-compete agreements.

Having found that Louisiana law applies to this dispute, the Court now turns to the specific provisions of the Employment Agreement to determine its compliance with Louisiana law.

---

[81] *Id.* at Response RFA No. 13; Response to Int. No. 9.
[82] No. 06-0987, 2009 WL 222958, at *2 (W.D. La. 2009).
[83] *See, e.g.*, *Horter Investment Management, LLC v. Cutter*, 257 F.Supp.3d 892, 905 (S.D. Ohio 2017).

### D. Compliant Geographic Region/Reformation

The Court must decide whether the geographic region specified in the Employment Agreement as "North America" complies with the strict requirements of Louisiana Revised Statute § 23:921(C), which provides as follows:

> Any person ... may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer *within a specified parish or parishes, municipality or municipalities, or parts thereof*, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.[84]

Clearly, Louisiana law requires an employment contract to contain a geographic region defined by specific parishes or municipalities. Further, the majority of Louisiana state and federal courts, as noted throughout, require strict compliance with the geographic specification requirement of La. R.S. 23:921. Indeed, this requirement places a higher burden on the employer to draft the employment agreement with geographic certainty as to the area the employee will be prohibited from competing with or soliciting the employer's business and customers. This higher burden reflects the public policy of Louisiana.[85]

Under some circumstances, Louisiana courts are permitted to reform non-compete restrictive covenants that fail to strictly conform to La. R.S. 23:921. As explained by the Fifth Circuit, although "[a] non-compete provision 'must strictly comply with the requirements of the statute[,]' ... if the provision is geographically overbroad, the court may rely on a severability provision to reform the overbroad provision and 'excise the

---

[84] Emphasis added.
[85] *See Lobrano*, 2011 WL 52602, at *4.

offending language.'"[86] Thus, a noncompete provision is "not invalid merely because [it] attempted to reach every Louisiana parish."[87] "If the provision fails to specify any valid geographical area, however, it cannot be reformed [for that would involve] rewriting a disfavored contract into compliance with a narrowly drawn statutory exception."[88]

The Fifth Circuit and Louisiana state and federal courts have routinely upheld the reformation of overbroad geographic restrictions by striking those parishes in which the employer did not operate. For example, in *Arthur J. Gallagher*, the Fifth Circuit upheld the reformation of a noncompete agreement, whereby the district court struck 55 of the 64 parishes listed in the agreement because the employer only provided services in the nine remaining parishes.[89] Similarly, in *Class Action Claim Servs., L.L.C. v. Clark*, the Louisiana Fifth Circuit Court of Appeal determined that a noncompete clause was enforceable in only three of the 23 parishes listed in the agreement, since those were the only parishes in which the employer "was actually conducting business."[90] And in *Dixie Parking Service, Inc. v. Hargrove*, the Louisiana Fourth Circuit Court of Appeal held that a severability clause would allow the court to "delete the nine extraneous parishes listed in the exhibit [to the contract] and apply the reformed contract to those parishes ... in which [the employer] currently operates."[91]

---

[86] *Brock Servs.*, 936 F.3d at 296-97 (quoting *Dixie Parking Serv., Inc. v. Hargrove*, 691 So. 2d 1316, 1320 (La. App. 1997), and *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So. 2d 294, 309 (La. 2001)).
[87] *Arthur J. Gallagher & Co. v. Babcock*, 703 F.3d 284, 292 (5th Cir. 2012).
[88] *Total Safety U.S., Inc. v. Code Red Safety & Rental, LLC*, 423 F. Supp. 3d 309, 314 (E.D. La. 2019) (collecting cases).
[89] 703 F.3d at 292; *see also In re Gulf Fleet Holdings, Inc.*, 2011 WL 1313901, at *9 (Bankr. W.D. La. Mar. 31, 2011) ("[W]hile Exhibit A lists all 64 parishes, the specific designations of individual parishes allow the court to excise parishes from the scope of the non-competition provision in the Employment Agreement based on the evidence presented at trial.").
[90] 892 So. 2d 595, 600 (La. App. 2004).
[91] 691 So. 2d at 1320.

On the other hand, Louisiana courts have refused to permit non-compete and non-solicit restrictive covenants where the contract provides for a geographic area defined at a level significantly broader than by parish or county.  For example, in *Lobrano v. C.H. Robinson Worldwide, Inc.*, the Western District of Louisiana determined that Louisiana law applied to a noncompete agreement between a Minnesota employer and a Louisiana employee.[92] The court concluded that the overly broad geographic scope clause, which sought enforcement "anywhere within the continental United States," could not be reformed and voided the noncompete provisions. Similarly, in *Plunk v. LKQ Birmingham, Inc.,* the Western District of Louisiana, after holding that Louisiana law applied to a restrictive covenant purportedly governed by Illinois law, held that a geographic limit that prohibited the plaintiffs from competing against the employer "anywhere within the United States" for a five-year period was "incredibly broad both geographically and temporally," and, thus, legally unenforceable and not capable of reformation.[93] This Court, in *L & B Transport, LLC v. Beech*, found that a clause which proscribed competition or solicitation by the employee "in Alabama" clearly offended § 23:921.[94] After summarizing precedent on § 23:921, the Court found:

> By referring to the entire state of Alabama without making reference to specific counties or municipalities, this language clearly fails to meet the statutory requirements set forth in Louisiana Revised Statutes 23:921 for geographical restriction in a non-compete provision.[95]

---

[92] No. 10–cv–1775, 2011 WL 52602 (W.D.La. Jan. 7, 2011).
[93] No. 12-2680, 2013 WL 5913755, *5 (W.D. La. Oct. 31, 2013).
[94] 568 F.Supp.2d 689 (M.D.La. 2008).
[95] *Id.* at 698.

Ultimately, the Court held that, "'[w]hile a strict interpretation of the statute can be criticized as being overly technical, such a reading is consistent with Louisiana's strong public policy prohibiting covenants not to compete.'"[96]

The clause at issue here restricting Fletcher's competition and solicitation in all of North America – an entire continent – is far broader than the nationwide and statewide clauses addressed above. It clearly violates Louisiana law and is not subject to reformation. Accordingly, without a specific geographic limitation, the non-compete/non-solicit clauses are null and void as a matter of law.

### E. Injunctive Relief

Because the Court has granted partial summary judgment in favor of Fletcher on his requested declaratory relief, and the challenged provisions of the employment agreement are rendered null and void, injunctive relief is unnecessary as there are no valid clauses to enforce. Accordingly, Fletcher's Motion for TRO/Preliminary Injunction and/or for Declaratory Relief[97] is DENIED as MOOT.

---

[96] *Id.* at 697 (quoting *Restivo v. Hanger Prosthetics & Orthotics, Inc.*, 2007 WL 1341506, *4 (E.D. La. May 4, 2007)).
[97] Rec. Doc. 3.

## III.     CONCLUSION

For the foregoing reasons, the Fletcher's Motion for Partial Summary Judgment is GRANTED;[98] MedVet's Motion for Summary Judgment is DENIED.[99] The bench trial and all trial-related deadlines are hereby canceled.  If any issues remain for trial, within ten (10) days from the date of this Ruling, the parties are directed to move for a Telephone Status Conference for the purpose of fixing a trial date on the remaining issues.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __15th__ day of May, 2025.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[98] Rec. Doc. 22.
[99] Rec. Doc. 23.